IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAVIER YBARRA, § | | |
| TDCJ #775707, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. H-07-1956 |
| § | | |
| ROBERT THOMAS, *et al.*, § | | |
| § | | |
| Defendants. § | | |

## MEMORANDUM AND ORDER

The plaintiff, Javier Ybarra (TDCJ #775707), is a state inmate in custody of the Texas Department of Criminal Justice – Correctional Institutions Division (collectively, "TDCJ"). Ybarra has filed a civil rights complaint under 42 U.S.C. § 1983, alleging that the defendants have acted with deliberate indifference to a serious medical condition. Ybarra appears *pro se* and he seeks leave to proceed *in forma pauperis*. After reviewing all of the pleadings as required by 28 U.S.C. § 1915A, the Court concludes that this case must be **dismissed** for reasons that follow.

I.      **BACKGROUND**

Ybarra is currently incarcerated at TDCJ's Ellis Unit in Huntsville, Texas.[1] Ybarra sues two correctional officials employed by TDCJ at the Ellis Unit: Assistant Warden Robert

---

[1] Public records reflect that Ybarra is serving a life sentence as the result of a felony conviction for attempted capital murder in 1996. *See Ybarra v. State*, No. 13-97-107-CR, 1997 WL 33643203 (Tex. App. — Corpus Christi Dec. 30, 1997, no pet.). Ybarra also has a recent conviction from 2005 for assault on a public servant.

Thomas and Captain Deleta Jones, who is identified as a supervisor of the administrative segregation area of the prison where Ybarra is presently assigned. Ybarra alleges that these officials have acted with deliberate indifference to a serious medical condition, namely, his allergy to "peanut butter products" and tuna fish.

According to the complaint and the grievances attached as exhibits, Ybarra filed an I-60 Official Request form on January 26, 2007, which was addressed to the Kitchen Captain. The I-60 alerted the Kitchen Captain that Ybarra, who had just arrived at the Ellis Unit on January 26, 2007, was allergic to peanut butter products as well as tuna and that, as a result of his allergies, Ybarra would like "something else in place of these two foods when they are the main course." In response, the Kitchen Captain, identified as "Captain Lassman," advised Ybarra to contact the medical department because Ybarra's records contained no record of any food allergies.

After receiving the official response to his I-60, Ybarra filed a step 1 grievance against Captain Jones on February 12, 2007, complaining that he was allergic to peanut butter and tuna and that he was denied a "substitute" in the form of a "cheese sandwich" or a "salami/balogna sandwich." (Step 1 Grievance #2007096293). Assistant Warden Thomas investigated the step 1 grievance filed by Ybarra and found that there was no documentation to support Ybarra's claim that he suffered from any food allergy:

> The issue presented was forwarded to the Medical department and Food Service for a response. According to the Medical department, there is no documentation in your medical record to reflect that you are allergic to tuna and peanut butter. You were treated for a rash on 2/10/07 and 2/12/07. If you are still having problems, submit a sick call request. In regards to the Food

2

> Service department, FSM IV Lassman stated that the kitchen has to provide an option when it comes to substitutes. When tuna is served, peanut butter and jelly is the option for that day. The policy requirements are met and no additional substitution is required. There is no evidence found nor presented to substantiate your claim. No action is warranted.

(Step 1 Grievance #2007096293, Response dated March 26, 2007). Unsatisfied with the response by Assistant Warden Thomas, Ybarra appealed the result of his step 1 grievance by submitting a step 2 grievance on March 30, 2007.

In his step 2 grievance, Ybarra repeated his complaint that he suffered from allergies to peanut butter and tuna and advised that his condition could be "fatal" if a proper substitute was not provided. (Step 2 Grievance, #2007096293). A prison administrator considered the appeal along with Ybarra's medical records, but found no documentation to support Ybarra's claim that he suffered from an allergy:

> The Step 1 grievance was reviewed regarding the allegation of an allergy to tuna and peanut butter that is not being acknowledged by medical and food service. Review of Electronic Medical Record documentation reflects that you had the opportunity to discuss your alleged allergies to tuna and peanut butter with a health care provider on 2-02-07 and 3-27-07. On 3-27-07 you were advised not to eat peanut butter and tuna[.] [Y]ou have been incarcerated for eleven years and no documentation can be found that you have these food allergies. Dissatisfaction with the treatment decisions rendered does not reflect ineffective medical care. The health care providers are responsible for determining the course of treatment, based on the current medical condition during a medical encounter. Clinical decisions, as determined by the facility health care providers are the responsibility of the universities contracted to provide health care services. In order to expedite resolution of medical complaints, you are encouraged to utilize the facilities medical complaints process by contacting the facility medical complaints coordinator before filing a grievance. No action through the grievance mechanism is warranted.

3

(Step 2 Grievance #2007096293, Response dated May 11, 2007). Thus, the prison officials who reviewed Ybarra's complaint about his alleged food allergies and his request for a substitute sandwich found no support for his complaint.

Ybarra filed this civil rights lawsuit under 42 U.S.C. § 1983, complaining that Assistant Warden Thomas and Captain Jones have acted with deliberate indifference towards his food allergies to tuna and peanut butter.[2] Characterizing his claim as one of deliberate indifference to a serious medical need in violation of the Eighth Amendment to the United States Constitution, Ybarra seeks compensatory damages. Ybarra also requests an injunction against these defendants in the form of a court order to compel them "to act in their capacity" as assistant warden and as captain in charge of administrative segregation to "authorize and enforce a food substitute for the allergic foods (peanut butter and tuna)" in order to ensure Ybarra's health and safety. The Court concludes, however, that the complaint must be dismissed for reasons discussed below.

## II.  STANDARD OF REVIEW

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA"), which mandates the dismissal of a prisoner's civil rights complaint under the following circumstances. Upon initial screening of a prisoner civil rights complaint, the

---

[2]  Ybarra does not state when he was supposedly diagnosed with the food allergies identified in his complaint and he does not provide any additional information about whether he contacted the medical department further in an effort to resolve the lack of documentation for this alleged diagnosis. Likewise, his complaint in this case does not identify any health care provider or complain about inadequate medical care.

PLRA requires a district court to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted;" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). A reviewing court may dismiss a complaint for these same reasons "at any time" where a party proceeds *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B) (mandating dismissal where the complaint is "frivolous or malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief"). The PLRA also provides that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

In conducting the foregoing analysis, a prisoner's *pro se* pleadings are reviewed under a less stringent standard than those drafted by attorneys and are entitled to a liberal construction that includes all reasonable inferences which can be drawn from them. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Alexander v. Ware*, 714 F.2d 416, 419 (5th Cir. 1983). "A district court may dismiss as frivolous the complaint of a prisoner proceeding IFP if it lacks an arguable basis in law or fact." *Geiger v Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). A review for failure

5

to state a claim is governed by the same standard used to review a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir.) (citing *Moore v. Carwell*, 168 F.3d 234, 236 (5th Cir. 1999) (citation omitted)), *cert. denied*, 537 U.S. 1049 (2002). Under that standard, courts must assume that the plaintiff's factual allegations are true, and a dismissal is proper only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations. *See id*. (citations omitted).

### III.   DISCUSSION

#### A.   Lack of Personal Involvement

Ybarra sues Assistant Warden Robert Thomas and Captain Deleta Jones, who is reportedly the administrative segregation supervisor. Ybarra asks this Court to issue an order compelling both of these officials "to act in their capacity" as supervisors to direct others at the Ellis Unit, presumably, prison officials employed in the food service department, to provide a "food substitute" for peanut butter and tuna when those items are served. Thus, Ybarra plainly sues these defendants in their supervisory capacity only.

A supervisor may not be held liable for a civil rights violation under a theory of *respondeat superior* or vicarious liability. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003). Supervisory officials can only be held liable if the plaintiff demonstrates that either one of the following: (1) the supervisor's personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the deprivation. *See*

6

*Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987); *see also Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997) ("[T]he misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor."). Supervisory liability exists without overt personal participation in an offensive act only if supervisory official implements a policy "so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Thompkins*, 828 F.2d at 304 (quotations omitted).

The complaint contains no specific allegations of personal involvement by Captain Jones. The only involvement by Assistant Warden Thomas appears to have been his role as the official who responded to Ybarra's step 1 grievance. To the extent that Ybarra suggests that either defendant somehow failed to adequately investigate the grievance that he filed regarding his allergies, Ybarra's allegations fail to state a claim. *Geiger*, 404 F.3d at 373-74.

In this instance, the response to Ybarra's step 2 grievance explains that there is no documentation of a food allergy in Ybarra's medical records and that any disagreement or dissatisfaction with the treatment that he has received from medical personnel regarding this issue must be resolved by contacting the "facility medical complaints coordinator." (Step 2 Grievance #2007096293, Response dated May 11, 2007). Neither Assistant Warden Thomas or Captain Jones are alleged to have any control over Ybarra's medical treatment or his medical records, which do not document any diagnosed food allergy. Ybarra fails to allege sufficient facts showing that the named defendants had personal involvement with his claim or that there was any causal connection between a particular prison policy and the alleged

7

wrongful conduct. Under these circumstances, Ybarra cannot maintain a civil rights suit against Assistant Warden Thomas or Captain Jones based on a theory of supervisory liability. Alternatively, the allegations in Ybarra's complaint do not show that Assistant Warden Thomas or Captain Jones were deliberately indifferent to his health and safety.

**B.     Deliberate Indifference**

As noted above, Ybarra alleges that the defendants have violated the Eighth Amendment to the United States Constitution by acting with deliberate indifference to a serious medical condition, namely, a food allergy to peanut butter and tuna. To the extent that Ybarra seeks compensatory damages, his claims fail as a matter of law because the PLRA, 42 U.S.C. § 1997e(e), bars recovery of these types of damages absent a showing that the plaintiff suffered a physical injury while in custody.[3] *Geiger*, 404 F.3d at 374-75 ("To the extent [that the prisoner] seeks compensation for injuries alleged to have resulted from a First Amendment violation, the district court properly determined that his claim is barred by the physical injury requirement of § 1997e(e)."). Absent an allegation that Ybarra suffered any physical injury in connection with the incident giving rise to his complaint, his claim for compensatory damages lacks an arguable basis in law and is subject to dismissal for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2)(B); *Geiger*, 404 F.3d at 374.

---

[3]    42 U.S.C. § 1997e(e) provides as follows: "No federal civil action may be brought by a prisoner confined to a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

8

To the extent that Ybarra requests injunctive relief, he fails to show that the defendants have violated his civil rights under the Eighth Amendment by acting with deliberate indifference to his medical condition (*i.e.*, his food allergies). "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)). The Fifth Circuit has stated that the deliberate-indifference standard is an "extremely high" one to meet. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

The deliberate-indifference standard has both an objective and subjective component. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To establish deliberate indifference under this standard, the prisoner must show that the defendants were both (1) aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn, and (2) that they actually drew an inference that such potential for harm existed. *See id.* at 837; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). Under the subjective prong of this analysis, "[a] prison official acts with deliberate indifference 'only if [(A)] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it.'" *Gobert v. Caldwell*, 463 F.3d 339, 347 (5th Cir. 2006) (quoting *Farmer*, 511 U.S. at 847). A showing of deliberate indifference requires the prisoner to demonstrate that prison officials "'refused to treat him, ignored his

complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Gobert*, 463 F.3d at 347 (citations omitted).

In this instance, the pleadings and the exhibits attached to the complaint reflect that Ellis Unit officials promptly checked Ybarra's medical records as soon as he advised them that he was allergic to tuna and peanut butter. The response filed to Ybarra's I-60 Official Request on January 26, 2007, shows that Captain Lassman checked Ybarra's medical records and found no allergy listed in those records. The response filed to Ybarra's step 1 grievance dated February 12, 2007, reflects further that Assistant Warden Thomas checked with both the food service department and the medical department to verify whether there was any allergy to peanut butter or tuna in Ybarra's records. The administrative official who responded to Ybarra's step 2 grievance made the same inquiry during his investigation of Ybarra's complaint. Each time, the reviewing official checked the medical records and found no documentation to support Ybarra's claim that he suffers from food allergies.

At best, the response to Ybarra's step 2 grievance reflects that he was advised by the medical department not to eat peanut butter or tuna. (Step 2 Grievance #2007096293, Response dated May 11, 2007). There is no showing, however, that this advisory was made because of a diagnosed food allergy. In fact the step 2 grievance response expressly notes that there was no documentation in eleven years' worth of prison records showing that any such diagnosis had ever been made. Ybarra fails to allege facts demonstrating that either of the defendants disregarded or ignored his claim that he had an allergy or that either one of

10

the defendants were deliberately indifferent to a serious medical condition. If anything, the complaint and the exhibits show that prison officials promptly investigated each of Ybarra's grievances and found no documentation in his medical records to support Ybarra's claim. Because the pleadings do not demonstrate a constitutional violation by Assistant Warden Thomas or Captain Jones, this case is subject to dismissal under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim.

## IV.   CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1. The plaintiff's request for leave to proceed *in forma pauperis* (Docket Entry No. 2) is **GRANTED**.

2. The TDCJ Inmate Trust Fund is **ORDERED** to deduct funds from the inmate trust account of Javier Ybarra (TDCJ #775707) and forward them to the Clerk on a regular basis, in compliance with the provisions of 28 U.S.C. § 1915(b), until the entire filing fee ($350.00) has been paid.

3. The plaintiff's complaint is **DISMISSED** with prejudice for failure to state a claim.

**The Clerk is directed to provide a copy of this order to the parties. The Clerk will also provide a copy of this order by regular mail, facsimile transmission, or e-mail to: (1) the TDCJ - Office of the General Counsel, P.O. Box 13084, Austin, Texas, 78711, Fax Number (512) 936-2159; (2) the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas, 77342-0629, Fax Number (936) 437-4793; and (3) the District Clerk for the Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas, 75702, Attention: Manager of the Three-Strikes List.**

SIGNED at Houston, Texas, on June 21, 2007.

*[signature]*

Nancy F. Atlas
United States District Judge